Good morning. I represent Nancy Smith, a long-time Phoenix resident, and we're here about a car accident that she had. When you take this dispute and you boil it down to its very essence, what you're left with is whether or not for canceling a policy. And Arizona has a, you know, has provided the insurance industry with a very special and very powerful way to cancel a policy, and they give a protocol for following the proper steps for canceling a policy. And if you're going to seek the protection of that protocol for canceling a policy, the law requires that you follow it, and you follow it with specificity. When you deviate from that protocol, then it calls into question whether or not you've done it right. Arizona's standard is announced in the case that both sides rely on, and you've heard a lot about that in the briefing, is the Norman case. And the Norman case is the case that kind of lays out the standard, and it adopts a clear and unequivocal standard. So if an insurance company intends to cancel a policy, they're required to have a clear and unequivocal notice of cancellation. Now, the easy way to do that is to send out a policy that says, or a notification that says your policy is hereby been some ambiguity, as you were just discussing, in whether the policy was or was not in effect before January 19, 2013, because of the language that you say might be required. But how is there any ambiguity as to whether the policy would be in effect after January 19? Fair enough, Your Honor, and I think the answer can be found or is addressed in the Norman case. The Norman case basically says that an insurance company may have a reinstatement option that it puts into its cancellation notice. And it says that if you do have a reinstatement option that you put in the cancellation notice, that it must contain clear and unequivocal language about the mechanics of the cancellation notice had a letter that went with it that said, if you pay before the cancellation date, then you have coverage, and there is no lapse in coverage. If you pay after the cancellation date, then we can accept the policy, a premium, and apply it prospectively and not retroactively. So it's clear from the Norman case itself that it lays out a framework that if you're going to have a reinstatement option, and the court says you must clearly and unequivocally give the mechanics of the reinstatement, explaining how to do it, and the consequences of failing to do so. Where is this notice deficient? Is there something? In the cancellation notice? Yes. It's deficient in that it doesn't explain to the policyholder, the reader, that if they pay the amount due, which is the $287, if they pay the amount due, would it be prospective or retroactive? So, for example, if they paid the amount due on the 19th, January 19th, would it be prospective or retroactive? Would there be a lapse in coverage for the day of the accident? And that was in dispute and briefed below. Because if not received by 1-19, your coverage will end on 1-19. Correct. It does, Your Honor. But it doesn't... Isn't that... The answer can be found in the outcome, but it asks for money at the same time. Well, yes, they say that this says it's printed on the 18th, and it ends. I don't understand how they could reasonably think that they had coverage three days after that. Fair enough, Your Honor. Starting, if you go back to the installment notice, which was sent out in December, they specifically state in the installment notice, this is the amount you owe, the $287 or $289. And it states specifically in the installment notice that if you pay after a quote, and this is directly out of the installment notice, a fee can be charged, a late fee, or an additional fee. And if you're canceling a policy, there's no reason to charge an additional fee or a late fee. If you have a queer and unequivocal intent to cancel the policy, why would you charge a fee, an additional fee at all? You would just send out a notice saying the policy's canceled as of that date. So, I mean, it creates an ambiguity in the sense of what exactly occurs if you do pay late and you pay an additional fee. Was there anything in this last letter that they sent out that indicated that they could reinstate themselves without any loss of coverage? In the cancellation notice, nor in the installment notice. Wasn't anything in there about that? No, Your Honor. Nothing in there at all. So once PEEC had cleared the 7-day grace period in ARS Section 20-1632.01, and the paries failed to pay within that 7-day grace period, does it matter that the cancellation notice had an unreasonable deadline to reinstate the policy? You know, it does, Your Honor, and it does for a couple of reasons. But couldn't the paries have paid within the original 7-day window under the statute? Yes, they could. They could have paid within the statutory period. And the focus on the grace period, in our view, is kind of a red herring because the statute sets out a 7-day period of time where you can pay and still have coverage after the due date on the premium. At that point in time, it becomes incumbent upon the insurance company to mail out a clear and unequivocal notice of cancellation, saying you're canceled. But at least from my understanding, Arizona law does not require PEEC to give the paries advance warning of the mailing. So, I guess, isn't PEEC allowed under Arizona law to set whatever deadlines over and above that 7-day period at once, even if they're unreasonably short? Because it seems like, I mean, that seems to be a compelling point here for your clients, is that they didn't get that last notification until after the grace period. And after that expires, then there's a notice of cancellation that the carrier sends out. And the Norman case addresses this. And it says, if you do a — if you give a reinstatement option in the cancellation notice, if you say amount due and a number, what you're basically saying is we'll accept your premium and continue coverage. So if you do that, if you have an amount due in that — in there, you have to explain both the mechanics of the — the mechanics of it and what the consequences of not doing it. So — Oh, so your argument is that this statement that if a minimum payment is not received by tomorrow, your coverage ends tomorrow, that that's actually an offer that they can reinstate? Yeah, it is an offer. And that's exactly what happened, Your Honor. I mean, we — they paid late. They paid an additional fee because they paid late, as the installment notice warned them they would. So the installment notice said, if you pay late after the cancel date, we may charge you an additional fee. They send out the cancellation notice saying amount due, coverage ends on the 19th of January. And they mail it on the 18th in the afternoon. So it sits in the box for five hours and goes through from Wisconsin to Arizona. They open the notice. Kevin opens the notice. Mr. Perry opened the notice and paid the premium at that point. After the accident. After he did it, after the accident. It was the days after the accident. So he got — I mean, and the Norman case says basically very clearly, if you're going to say, pay us money, give us some money, you know, in your cancellation notice, you can do that. The law allows that, allows you to ask for money in the cancellation notice. But if you do, you have to explain both, you know, how to do it and what happened. So if — and I can see that if the peak notice had said, if you pay late after the 19th, then you will have a lapse in coverage until we receive the payment. And that's really what the law provides. I mean, there was some shuffling about the Temple case that we referred to in our brief, and the Temple case is not an automatic cancellation because it precedes the statute. But in that case, the carrier actually said, you know, we're accepting your premium, but we're doing it prospectively. And when you have a notice saying, pay us money, but you don't tell the policyholder what the ramification or consequences are for pay us money, and they pay money, it's unclear and it's ambiguous whether or not the premium is going to be paid prospective or retroactively. But it said you will now be driving without coverage, right? What's the significance of that? Well, you know, and I think that goes to the very heart of the ambiguity, Your Honor. I mean, here, they use both the present tense and the future tense. They say, if you don't pay, you will be — your policy will be canceled. And then further on down the notice, they say you are now doing that. And, you know, the Norman court said, if you're going to do that, if you're going to go back to and say, pay us money and we'll reinstate the policy and include what the Norman court refers to as a reinstatement option, you can do that. But you have to explain the consequence of it. You have to say, if you pay after the cancel date, you will have a lapse in coverage until we receive the payment, and then we'll apply it effectively to a new policy or we'll reinstate it. If you pay before the cancel date, then there is no lapse in coverage. And they don't do that. And both the Norman case and the DeTemple case address that issue. And they do it under different — one does it under the rubric of the statute, and one does it under the rubric of the common law or reasonable expectations. And the reasonable expectations in Arizona is, you know, a common law doctrine, and it basically starts with, did the carrier do something to induce the policyholder to believe that they would have coverage? And that's the Darner Motors case. And it's applicable to this case. Your essential argument is that a notice that you're not — that you have no coverage as of January 19th is actually an offer to reinstate. Absolutely, Your Honor. Absolutely. Okay. Do you want to reserve the rest of your time? I would like to reserve the rest of my time. Okay. Good morning, Your Honors, and may it please the Court. My name is Jennifer Anderson, and I represent the Applee Peek Property and Casualty Insurance Corporation. Your Honors, the district court properly granted its judgment on the pleadings to Peek because the cancellation notice that was sent to the Perrys clearly and unequivocally canceled their auto insurance policy as of January 19th, 2013, when the Perrys failed — not only ignored a prior installment notice, but they failed to make a payment even three days after the statutory grace period. And I want to just at the outset, if I could, really distinguish between two things, which I think are a little bit muddled. Norman says two basic things. It says that notwithstanding the statute, an insurer can postpone the cancellation date as long as the intent to cancel by that date is clear and unequivocal. The insurer can also provide a reinstatement offer, but it doesn't have to. The language is may. It may provide a reinstatement offer. So what appellants are trying to argue, as far as I can tell, is that because there was a delay or postponement of the cancellation date, that necessarily makes it an offer to reinstate the policy, and that's simply not the case. Nothing about this cancellation notice invited the Perrys to pay after January 19th. Well, hold on. Because — and I guess I'm just trying to determine what significance we should assign to the fact that the premium owed under the cancellation notice was the same amount as in the Perrys monthly bill. Correct, Your Honor. So what — should we not put any significance to that? Well, the significance of it is that the premium amount due is not standing alone. It's accompanied by an explanation of why it's there. That explanation is that it helps to define the termination date. It says if a minimum payment of $286.37 is not received by January 19th, 2013, your coverage will end on that day. So, for example, let's say the Perrys paid $150 by January 19th, but not the full $286. What about the — they paid late fees, and as far as I know, that was never returned to them. Doesn't that all suggest that they were paying on their existing policy and not a new policy? I mean, because it seems like that's your argument from your briefing, is that the money that they paid after they got this notice after the — two days after the accident, that that was going toward a new policy. So I'm just not sure that that would have been clear to them in light of the fact that they paid the same amount of money that they were paying on a regular bill, and then they paid a late fee. So, at the very least, I'm just wondering, wouldn't it, under Norman, wouldn't a reasonable person assume as much? Well, first of all, if you look at the installment notice, it doesn't say we will accept late payments as long as you pay a fee. It says please mail it on time. You know, late payments or insufficient payments may result in additional fee at the insurer's discretion, and it certainly doesn't say that there will be no lapse in coverage. And so the plaintiffs, the appellants, latched onto this language about a fee in the installment notice, first of all ignoring that they rejected that installment notice by not making a payment by January 9th, which was the actual due date. So, as the district court found, that January, that December 20, 2012 installment, that was the offer. That was the only offer involved, and the Perrys rejected it. Now, if I could just follow up. What did they get by paying four days later with the late fees? So, there are no allegations making it plausible that the extra money was for a late fee. There's nothing in the record. The only thing in the record is a complaint that says, a complaint allegation that says. I'm sorry. Are you answering Judge Schroeder's question? I'm sorry. What did they get? What did they buy when they paid the money? I'm sorry. I was trying to get there, but I was taking too long. They got a new policy. They got a new policy, which was issued. So, Mr. Perry called the insurer on the 23rd, I believe. A new policy was issued that day, effective on January 24th. It was sent to the Perrys. They've never claimed they didn't get it. They've never asked for their money back. And the terms of it are the same as the old policy? Yes. But there is that lapse in coverage between when their policy was canceled on the 19th and when it was reinstated on the 24th. I'm sorry. Go ahead. The language in the cancellation notice simultaneously says, and it seemed a little confusing, says that the policy is canceled and that it will be canceled. Simultaneously, it says that. And so, how is that not ambiguous? Well, it's not ambiguous because looking at the notice of cancellation as a whole, it is clear and unequivocal that Peek canceled the policy as of the 19th. It's called a nonpayment cancellation notice. Well, but it's clear that it's canceled and will be canceled. Will cease at and from the hour and date mentioned above, which is January 19th, 2013, at 12.01 standard time. You are now driving without insurance protection. Could it have been worded differently? I suppose. But there's nothing ambiguous about saying your insurance will terminate on that date at that time. What if the Perrys had paid the amount due before January 19th? Based on the language in the cancellation notice, it states you are now driving without insurance. Wouldn't Peek have been able to turn around and still deny coverage based on that language? If Peek received payment on the 19th, they would have not been able to deny coverage. Could they have? Not based on this cancellation notice. And that is the entire reason why Peek worded the termination effective date as it did. If you're just making the cancellation effective on mailing, you get a problem where what if the payment comes in on the same day that the notice goes out? Then there's a factual dispute about whether Peek got the payment before or after it issued the notice. The way this is worded, if the minimum payment of 286.37 is received by January 19th, you know, if it's not received by January 19th, your coverage ends that day at 12.01. If it is received, then that is a nullity and your coverage is in place. I'm just trying to follow Norma because it seems like Norma is helpful here. And Norma tells us that each cancellation notice should be judged based on the language in it and the circumstances under which it was sent. So just what weight should we give the circumstances here where there was no possible way, at least it looks like, that the Perrys could have paid by the cancellation date because the notice was sent only hours before the deadline expired? Well, and, Your Honor, that's even further proof that it wasn't an offer. No one could ever accept that offer. It was not intended to be a reinstatement offer under Norman. This case is actually easier than Norman because Norman involved both a cancellation and a reinstatement offer, and it gave the insureds 13 more days to get in their payment. Here, the insurer is trying to eliminate ambiguity, and they're giving an extra day. The insurer sure doesn't know they're getting an extra day, but they're not required to know that they're getting an extra day. The traveling public is getting an extra day of protection. So it's really contrary to public policy to say that a cancellation notice, which provides ample proof that it terminates on a certain day, is ambiguous. But if it's not a reinstatement offer, what is it, and why do you send it at all? It's a nonpayment cancellation notice. In order to cancel a policy in Arizona for nonpayment of premium, you have to send a notice. You must send a notice under the statute. But hadn't they already received a notice previously? Not a cancellation notice, no, Your Honor. They had received an installment offer, which the district court recognized was the only offer. And it said on it, this is the only offer you will receive. We do not provide, you know, follow-up offers or reminder offers. And so the Perrys were fully on notice. And this was mailed. I think it was printed and put in the mail, and they get it. And the insurer knew that they would get it after the date? Yes, Your Honor. Yes, Your Honor. And that's the reason for the language, you know, you are now driving without insurance protection. The insured was going to get it after, you know, that date had passed. Did you say that there's no explanation of this late fee in the record, or is there? Let's see what it says. That seems to be an inclination that they reinstated the old policy. All right. Here's what the complaint says, and I'm sure that if I'm missing something, Mr. Lewis will make that apparent. So paragraph 51 of the complaint says, On January 23, 2013, Mr. Kevin Perry paid $294.37 to Peek for a premium payment. Peek accepted the premium payment, which included premiums for January 18, 2013 to January 23, 2013. To this day, Peek has never returned any of the premiums he accepted from Mr. Perry. So there's nothing about a fee there. There's nothing about a fee in the record. I mean, and actually in the district court, plaintiffs were saying it was a $5 fee, but then they realized that doesn't add up and turned it into an $8 fee. Is it called a late fee, or is it interest, or what is it? If it's a late fee, it sounds as if the old policy continued on. There is nothing in the record or in the allegations that the Perrys paid a late fee in conjunction with that as part of or in conjunction with that payment on January 23. Both parties attached numerous documents not in the record to their pleadings. There's no affidavit from the Perrys. They're saying, you know, this was a fee, or the insurance company told us it was a fee, or the insurance company said we could pay a fee. They made this payment. And the accusation is they got another policy. They got another policy. Yes, Your Honor, and that is in the record as well. And I want to touch on a couple of our policies in the record. Yes. Yes, Your Honor. And it has a date on it? Yes, and it's effective January 24 after the accident. And why is it so clear to you that they would have known that that was clearly a payment on a new policy, especially if it included a late fee? I guess I'm having just a little bit of difficulty reconciling that. Well, under Arizona law and actually under the DeTemple case that the appellant cited, I'm sorry, for the first time in their reply brief, we objected to that argument, but in hindsight probably don't mind it because actually the DeTemple case supports the appellees. Because in DeTemple it says that where the insured fails to make a timely payment in response to an installment notice, such as the installment notice sent here in December 2012, that's a rejection of that offer. When the insured pays a late fee, that's a counteroffer. That's construed as a counteroffer, which the insurer then has an opportunity to accept or not accept. In DeTemple, the insured paid a late payment accompanied with a note saying, please accept this as premiums for my old policy. But the insurance company then rewrote a new policy, just like here, with a new start date that didn't cover the accident. And the court held that that was a clear indication, that was a clear rejection of the insured's counteroffer and it was appropriate. So the cancellation was upheld and there was a new policy. There has to be clear and unequivocal or there has to be clear manifestation of a waiver. In other words, the elements of a waiver which are discussed in DeTemple are not here. A waiver of? Waiver of the cancellation date, you know, waiver of a late payment. So you can't. But I just want to make sure, because you just said previously that there's no evidence of a late fee. But it seems like Perry's paid more than $286.37. It looks like it was $8 more, which I think the installment notice says is the late fee. So the installment notice, I'm sorry, Your Honor, the installment notice does not contain a number for a late fee. There's no amount. I mean, maybe in the Perry's mind they were paying a late fee voluntarily. I don't know where that number came up from. But keep in mind that the new policy has a new premium for the new period. So there's nothing in there about how that money came, how that amount came to be. You're thinking that that's an increase in the premium, but we don't know that either. There's nothing in the record that indicates what it is, other than a payment for a premium of some sort, either the old policy, which the Perry's contend, or the new policy, which under DeTemple, that's because Peek never waived its right to cancel. What else would it be if it wasn't a late fee? I'm sorry, Your Honor. It's a somewhat limited record because this was a motion for judgment on the pleadings. There's nothing in the policy that indicates that there was a new policy that was issued. It has a date on it. Yes. It had a date on it, and it also said that all prior bills and notices of cancellations, that those dates did not change. It didn't change any of the ‑‑ Did they report the accident to the insurance company? Yes, Your Honor. All right. Thank you very much. Thank you. I think the court has hit on a very important issue, which is this additional fee. And as counsel pointed out, it was decided as a motion for judgment on the pleadings, so we didn't have the benefit of discovery. We didn't have a benefit of doing interrogatories to figure out exactly what this fee was for. Well, you had the policy. Did you argue this? We argued that it was an additional fee that was presented, and it's just exactly $8 more. And when you couple that with the fact that the installment notice says if you pay after, and this is a quote, the cancel date, if you pay after the cancel date, we may charge you an additional fee. So maybe I jump to conclusions that the exact $8 fee was a late fee or an additional fee on the old policy, but in a motion for judgment on the pleadings, we have no ‑‑ we can't take a deposition. We can't do a 30‑6 notice. We can't ask them what that was for. You know, and so ‑‑ but when you couple those two communications, it leads a reasonable person to assume, as it did me and perhaps the Court, that the $8 was a fee, a late fee or an additional fee for the new premium. Because the installment says that there will be an additional fee imposed if you pay after the date. If you pay after the cancel date. And what the installment notice doesn't say is if you pay after the cancel date, there may be a lapse in coverage. And that's really what goes to the heart of Norman. And, you know, I draw the Court's attention to the paragraph 21 of Norman where it basically says they reject Elkins, but then they go on to say when a notice is referenced to an amount due, as this cancellation did, is unaccompanied by an explanation, this creates an uncertainty to the policyholder that results in a disqualifying ambiguity. And that's right there in Norman. So if you give a cancellation notice that says pay us money and there's a reinstatement notice and you don't explain what that's for, then you are ‑‑ it's a disqualifying ambiguity. But where's the language of the installment notice that we're talking about? The language of the installment notice is in the record at ‑‑ I know. I'm holding the installment notice. What is it that I'm supposed to be looking at? Part of the bottom of the page, Your Honor, payments received after the cancel date on an amount less than the minimum amount due may incur an additional fee. After the cancel date, yes, Your Honor. That's the language we're referring to. I thought it might have been a reference to late fee, but apparently the insurance company representative is saying she doesn't know what that is referenced to. Well, you know, and it would be interesting to know. I mean, like I said, there's a motion for judgment on the pleadings. We had no discovery. We did argue that. But if you take $8 and you add it to the amount due, you end up with the amount that they collected. And it was a collection that they took from a payment the day after the accident on the old policy number. So, I mean, it's not like they went through a new underwriting process and they went through and re-rated him and then gave him a premium increase based on some kind of rating. The day after the accident he called and they took the payment over the phone and they took the $287.37, added $8 exactly to it, and that's what they took as a premium payment. They didn't say anywhere that there's going to be a lapse in coverage.  If you take a late premium payment and you accept that, the onus is on you. You know, this is what I don't understand. They issued a new policy. Yeah, they did issue a new policy. And you said that they've accepted this as payment on the old policy. Yeah, Your Honor. I don't follow that that's the case. Well, and I completely understand. And here's how we argued it, both below and in our brief, is that it's not a meeting of the minds. It's not mutual assent. Kevin Perry calls and says, I want to pay my premium to extend coverage, and he's got the premium notice in his hand, and he pays the $287.37. And at that point, they turn around. I'm sorry, Your Honor. Go ahead. This is when he calls on the 22nd. The 23rd, yeah. The 23rd, after he's had an accident and the accident takes place the day before. Yes, Your Honor. And he's got the cancellation, he's received the cancellation notice that says your insurance was canceled on the 19th, and he's told he doesn't have any insurance, and then he gets a new policy. Yeah, but he didn't offer to buy a new policy. He offered to reinstate his own policy. The insurance company rewrote the policy with the lapse. There's got to be an offer and acceptance, and this is what I'm saying. The Temple case gives some guideline. What Kevin Perry did, the installment notice is pay $287.37 and we'll continue your coverage without a lapse. That's the installment notice. The cancellation notice says we'll reinstate you for $287.37, right? And what he did is he paid the $287.37 plus an $8 fee, and then they rewrote a whole new policy. They accepted an offer that wasn't out there. That's kind of what I'm saying. Thank you very much. Thank you both for your presentations and arguments here today. The case of Perry v. Peek. I'm sorry to interrupt. Jennifer Anderson for Peek. We had a motion to strike portions of the reply brief, which I neglected to mention during my oral argument, and alternative to that we requested the ability to file a SIR reply directly addressing just the new arguments based on the Temple. I think that would be helpful for the Court if we were able to do that. Thank you. Thank you. I'm not ordering that. We'll let you know if we order for supplemental briefing, but the case of Perry v. Peek, Property and Casualty Insurance Corporation is now submitted.
judges: Siler, Schroeder, Murguia